**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| FRED FLORES, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) )   Case No.  CIV-08-1067-F ) |
| MONUMENTAL LIFE INSURANCE COMPANY, | ) ) ) |
| Defendant. | ) ) |

## ORDER

"Defendant's Motion for Summary Judgment," filed February 27, 2009, is before the court. (Doc. no. 24.) The motion has been fully briefed and is ready to be determined.

### I. Introduction

This action involves claims based on an accidental death insurance policy. The petition, which was removed to this court, alleges breach of contract, bad faith denial of insurance benefits and handling of plaintiff's claim, and negligence *per se*. The petition alleges that at the time of her death, Sandra Flores, the deceased wife of plaintiff Fred Flores, was covered by an accidental death policy issued by the defendant, Monumental Life Insurance Company, and that defendant has wrongfully refused to pay benefits due under the policy.

### II. Standards

Under Rule 56(c), Fed. R. Civ. P., summary judgment shall be granted if the record shows that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." The moving party has the burden

of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). A genuine issue of material fact exists when "there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In determining whether a genuine issue of a material fact exists, the evidence is to be taken in the light most favorable to the non-moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). All reasonable inferences to be drawn from the undisputed facts are to be determined in a light most favorable to the non-movant. United States v. Agri Services, Inc., 81 F.3d 1002, 1005 (10th Cir. 1996). Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials, demonstrating that there is a genuine issue for trial. Posey v. Skyline Corp., 702 F.2d 102, 105 (7th Cir. 1983).

### III. Undisputed Facts

The following facts are undisputed.

On May 16 or 17, 2006, Sandra Flores fell and injured her right arm and elbow. Ms. Flores was admitted to Tulsa Regional Medical Center the next day, where she underwent surgery on her right arm. She was discharged from the hospital on May 26, 2006, and transported to the George Nigh Rehabilitation Center on that date. A few hours after arriving at the Center, Ms. Flores died. After performing an autopsy, the Oklahoma State Medical Examiner concluded that Ms. Flores's death was caused by Verapamil toxicity.

There is no dispute that Ms. Flores's death was caused or contributed to by Verapamil and that the cause of death was Verapamil toxicity. In addition, the autopsy reported that Ms. Flores was suffering from chronic hepatitis and cirrhosis of the liver, and that drug accumulation may result from cirrhosis. Ms. Flores was taking Verapamil for her high blood pressure, a condition for which Verapamil is commonly

prescribed. She had been taking the drug for a long time prior to her death. There is no dispute that if she had not been taking Verapamil, Ms. Flores would not have died when she did. The petition alleges that Sandra Flores "died as a result of a Verapamil overdose at the Tulsa Regional Medical Center." Elsewhere, however, plaintiff indicates that Ms. Flores's fall was the accident plaintiff contends caused her death.[1] There is no need to limit plaintiff to one or the other of these two possible events as constituting the accident in question. The court evaluates the motion presuming that plaintiff could press either or both of these theories at trial if this action survives summary judgment.

It is undisputed that the policy in question is an "accident only" policy.[2]

It is also undisputed that Mr. Flores knew he applied for a policy that provided benefits only in the event of an accidental death.

It is undisputed that the following provisions are contained in the certificates of insurance provided to plaintiff. (See certificates of insurance, doc. no. 24, ex. no. 1 at pp. 2-4 and ex. no. 2 at pp. 3-5.)

-- Under the heading "**ACCIDENTAL DEATH BENEFIT**, the certificates provide:

"When [Monumental] receive[s] due proof that a Covered Person dies, [Monumental] will pay the benefit shown on the Schedule of Benefits to [the deceased's] named beneficiary; provided:

---

[1] *Cf.* plaintiff's argument that plaintiff was killed by an overdose of Verapamil, and that the overdose was unexpected, unintended and unforseen in the eyes of the insured (doc. no. 32, p. 30), with plaintiff's deposition testimony that he obtained the policy for accident coverage and that the fall "was the accident part of this thing." (Doc. no. 24, ex. 16, p. 107, lines 8-17.)

[2] This order uses the terms "policy[ies]," "certificate[s]" and "certificate[s] of insurance" interchangeably.

    (1)    death occurs as a direct result of an Injury; and

    (2)    death occurs with 356 days of the accident causing the Injury."

-- The certificates include the following definitions, in the "definitions" portion of the policy.

"**INJURY** means bodily injury caused by an accident. The accident must occur while the Covered Person's insurance is in force under this Policy. The Injury must be the direct cause of the Loss and must be independent of all other causes. The Injury must not be caused by or contributed to by Sickness."

"**LOSS** means the death of the Covered Person...."

"**SICKNESS** means an illness or disease which results in a covered Loss while insurance for the Covered Person is in force under this Policy."

-- The certificates also include the following exclusion, expressly denominated as such, in the "exclusions" portion of the policy.

"**EXCLUSIONS**. [Monumental] will not pay a benefit for a Loss which is caused by, results from, or [is] contributed to by . . . Sickness or its medical or surgical treatment, including diagnosis."

.....................................

The certificates show that their first pages do not include, in either contrasting color print or boldface type at least equal to the type used for the policy caption, a prominent statement that "This is an accident only policy and it does not pay benefits for loss from sickness." Accordingly, the court finds it an undisputed fact that the policies do not comply with Okla. Admin. Code 356:10-5-6.[3]

---

[3] By this finding, the court suggests nothing about whether compliance is required. Defendant contends the disclosure provision does not apply because the certificates in question "are

(continued...)

IV. Discussion

Defendant's first ground for summary judgment is that there is no coverage because the policy provides that defendant will pay in the event that death occurs as a result of an injury, and "injury" is defined in the policy as, among other things, one that "must be independent of all other causes." (This order sometimes refers to this language as coverage language, because it states the type of injury and accident for which the policy will pay benefits.) Alternatively, defendant argues there is no injury within the meaning of the policy because the definition of injury, as stated in the certificates, provides that "The Injury must not be caused by or contributed to by Sickness," and because, consistent with this provision, the exclusions portion of the policy states that defendant will not pay benefits "for a loss which is caused by or contributed to by Sickness or its medical or surgical treatment...."[4] (Although found in different sections of the policy, this order sometimes refers to both of these provisions together as the policy's "exclusionary" provisions or as "sickness language.") If defendant carries its burden under either set of arguments -- that is, if defendant shows that Ms. Flores's death does not come within the coverage language of the policy, or if defendant shows that Ms. Flores's death is excluded under the policy because it was contributed to by a sickness or disease or treatment for same, then defendant will be entitled to summary judgment.

---

[3](...continued)
group, not individual policies," and because Okla. Admin. Code 365:10-5-2 indicates that the disclosure requirements do not apply to individual policies issued pursuant to a conversion privilege in a group policy. (Doc. no. 33, p. 4.)

[4]In addition to these two sets of arguments, defendant also argues that medical malpractice is not an "accident" under the terms of an accidental death policy. Plaintiff has not presented any developed argument as to why any possible medical malpractice which might have occurred could require payment under this policy. Accordingly, the court need not and does not separately address defendants' medical malpractice discussion, except to note that any argument plaintiff might have pressed based on medical malpractice is implicitly rejected by the rulings contained in this order.

In response, plaintiff makes several arguments regarding the invalidity of "the sickness exclusion," *i.e.* the particular sickness exclusion – one of a number of exclusions in the policy – relied on by defendant when it denied the claim.[5] The court interprets plaintiff's arguments broadly, however, and considers whether any of the sickness language in the policy should be stricken on the basis of plaintiff's arguments. (To reiterate, as used by the court in this order, the phrase "sickness language" includes not only the particular sickness exclusion denominated as such in the exclusions portion of the policy, but also the provision in the definition of injury which states that "[t]he Injury must not be caused by or contributed to by Sickness.") The gist of plaintiff's argument is that the sickness language should be stricken due to defendant's failure to comply with Oklahoma law. For this position, plaintiff relies almost entirely on Johnson v. Life Investors Ins. Co. of America, 216 F.3d 1087 (table) (10th Cir. 2000), an unpublished decision applying Utah law.

As in this action, Monumental was a defendant in Johnson, and the policy language in question in Johnson is exactly the same language that is in question in this action. Moreover, the Utah disclosure regulation in question in Johnson is virtually identical to the Oklahoma disclosure regulation relied on by plaintiff in the instant action. Both the Utah and the Oklahoma regulation require that accident only policies shall contain a prominent statement on the first page of the policy or attached thereto, in either contrasting color or bold type, stating "This is an accident only policy and

---

[5] Plaintiff may emphasize the sickness exclusion due to his contention that Judy Hershey, the claims examiner, identified the sickness exclusion as the basis for her denial. Even if such testimony would be sufficient to keep defendant from relying on other language in the policy (a finding the court does not make), plaintiff overstates Ms. Hershey's testimony. As Ms. Hershey's testimony makes clear (doc. no. 32, ex. 4, p. 116), she only testified that the sole exclusion relied on by the defendant was the sickness exclusion. She did not testify that other terms and conditions in the policy were not applicable. *See also*, denial letter of April 7, 2008 (doc. no. 24, ex. 15, denying benefits under the sickness exclusion and other terms and conditions of the policy including the definition of "injury").

it does not pay benefits for loss from sickness." *See*, Okla. Adm. Code 365:10-5-6; and Utah Adm. Code R590-126. In <u>Johnson</u>, as is the case here, none of the policies in question complied with the disclosure regulation.

In <u>Johnson</u>, the insured fell while walking up the stairs. He was hospitalized, developed pneumonia and ultimately died. Monumental argued that the deceased's myotonic dystrophy contributed to his death, but the Court of Appeals stated that this argument was irrelevant to its determination. *Id.* at *4. The Court of Appeals upheld the trial court's ruling that Monumental could not rely on the sickness exclusion or on other exclusionary language covering the same topic, because Monumental had not complied with Utah law regarding the disclosure. *See*, *id*. at *4. <u>Johnson</u> rejected Monumental's argument that the trial court had erred by striking the definition of "injury" from the policy. On that point, the Court of Appeals stated in a footnote that it is "nonsensical to assert the insurer may violate the disclosure regulation and be estopped from relying on the sickness exclusion, but then allow the insurer to nevertheless deny coverage based on other language in the policy which effectively excludes injuries allegedly resulting, in part, from sickness." *Id.* at n.5. The Court of Appeals does not appear to have separately considered whether the trial court went too far when it excluded the portion of the "injury" definition that provided that an injury "must be independent of all other causes." A fair reading of note 5, however, is that the Court of Appeals specifically upheld the voiding of all "sickness language" contained in the policy, and may have also intended to uphold the voiding of the broader coverage language in the definition of "injury" which required that an injury be "independent of all other causes."

Either way, for its result, the Court of Appeals relied on Utah cases, at least one of which <u>Johnson</u> parenthetically described as holding that "the insurance company was estopped as a matter of law from denying coverage under its policy due to its

failure to comply with Utah insurance law." *Id.* at *4, citing General Motors Acceptance Corp. v. Martinez, 668 P.2d 498, 502 (Utah 1983).  By contrast here, plaintiff has not cited any Oklahoma law that indicates striking or voiding any policy language should result from Monumental's failure to comply with the disclosure requirement of Okla. Adm. Code 35:10-5-6, assuming that provision applies.  Nor has plaintiff cited any authorities suggesting, in the circumstances of this case, that the appropriate remedy is to estop Monumental from denying coverage, which is essentially what was done in Johnson in reliance on Utah law.

Unsurprisingly, defendant argues that Oklahoma law, unlike Utah law, does not support the type of remedy applied in Johnson.  Defendant argues that courts applying Oklahoma law consistently decline to void policy language absent a statute mandating that penalty, and that no statute or regulation mandates any particular penalty for the non-disclosure in question.  Defendant cites FDIC v. American Casualty Co., 975 F.2d 677 (10th Cir. 1992) which applies Oklahoma law.  In that decision, the Tenth Circuit stated that failure to comply with 36 O.S. § 3610 of the Insurance Code (a prior version regarding approval of insurance forms by the Insurance Board) should not result in voiding the exclusion that had not been approved.  American Casualty reasoned as follows:

> [W]e do not believe that the Oklahoma legislature intended that otherwise lawful exclusions be voided simply for failure to comply with section 3610.  Voidance of exclusion to an insurance policy is a severe penalty which alters the very terms of the deal between the parties.  It requires the insurer to provide coverage for uncontracted risk, coverage for which the insured has not paid.  The legislature specifically required voidance of provisions in at least two other sections of the Oklahoma Insurance Code.  Its failure to provide a similar explicit penalty for violation of section 3610 indicates that it did not intend such a severe sanction.

*Id.* at 683.  *See also*, 36 O.S. 2001 § 3620, providing that "[a]ny insurance policy...issued and otherwise valid which contains any condition or provision not in compliance with the requirements of this Code, shall not be thereby rendered invalid but shall be construed and applied in accordance with such conditions and provisions as would have applied had such policy...been in full compliance with this Code."

After careful consideration, this court concludes that Johnson is not persuasive here, because Johnson is expressly dependent on Utah law which differs markedly from Oklahoma law with respect to the proper remedy in the event of failure to comply with the disclosure requirement in question.  Accordingly, the court declines to strike or void any language from the instant policy, under Johnson or otherwise. As additional support for its conclusion that no language should be stricken or voided here, the court notes that it is undisputed in this action that plaintiff knew he was applying for a policy that provided benefits only in the event of an accidental death.

The above determination means that the court must now consider the viability of plaintiff's various theories of liability under the policy as written.  The court first considers the contract claim for incorrect denial of benefits, then the bad faith claim, and finally the negligence *per se* claim.

Leaving all exclusionary language or "sickness language" aside for the moment, the threshold issue with regard to whether benefits should have been paid is whether Ms. Flores's death was the direct result of an "injury" that caused her death "independent of all other causes." (Certificates of Insurance, doc. no. 24, ex. no. 1 at p. 2 and ex. no. 2 at p. 3; definition of "Injury.") Although he claims that other policy provisions are ambiguous, plaintiff does not argue that the above-quoted coverage language is ambiguous, and the court finds that it is not.  Thus, the court gives this language its plain meaning.  *See*, 15 O.S. 2001 §§ 151 *et seq.* (rules of contract construction); Wynn v. Avemco Ins. Co., 963 P.2d 572, 575 (Okla. 1998) (insurance

contract is liberally construed to give a reasonable effect to all of its provisions; parties to an insurance contract are free to cover such risks as they see fit and are bound by the terms of the contract; construction of an insurance contract should be a natural and reasonable one, fairly construed to effectuate its purpose; a policy of insurance is a contract and should be construed as every other contract, that is, where not ambiguous, according to its terms; an insurance company may limit the risk for which it is responsible).

To reiterate, it is undisputed that Ms. Flores died of Verapamil toxicity; that that Ms. Flores took Verapamil, which was prescribed for her, because of her longstanding high blood pressure condition; and that if Ms. Flores had not been taking Verapamil she would not have died when she did and would not have died from her fall. It is also a necessarily undisputed fact that if Verapamil had not been prescribed for Ms. Flores, she would not have been given an alleged overdose of that drug and would not have died from an overdose of that drug. From these facts it follows that Ms. Flores's high blood pressure and her treatment for that condition were at least contributing causes (or a contributing cause) of her death. This is true whether plaintiff relies on Ms. Flores's fall as the accident which precipitated or caused her death; or on an alleged overdose of Verapamil as the accident which precipitated or caused her death. (This is also true if Ms. Flores's death was not caused by either an accidental fall or by an accidental overdose but was caused by her hepatitis and liver cirrhosis as conditions which may explain her toxic reaction to the Verapamil.) Thus, although there a number of disputed facts presented by this record, none of those disputed facts, no matter how they might ultimately be determined (and the court presumes at this stage that they would all be determined in plaintiff's favor), challenge the proposition that Ms. Flores's death was not caused by her fall alone (if plaintiff relies on her fall as the precipitating accident) or by an overdose of Verapamil alone

(if plaintiff relies on an alleged overdose at the treatment center as the precipitating accident).

It is indisputable that whatever accident or accidents caused Ms. Flores' death, there was no accident (or combination of accidents) that was the cause of her death "independent of all other causes," as required by the coverage language in the policy.

Although this is a harsh[6] result from plaintiff's standpoint, Oklahoma courts (as well as the Tenth Circuit applying Oklahoma law) have reached similar determinations in favor of insurers in cases involving claims for benefits under accidental death policies where more than one factor caused or contributed to the insured's death.  In Hume v. Standard Life and Accident Insurance Company, 365 P.2d 387 (Okla. 1961), for example, the Oklahoma Supreme Court upheld a directed verdict for the insurance company on ground that there could be no double indemnity recovery for death resulting from the concurring effect of an injury received in a car wreck and a pre-existing aneurism.  Although the insurance contract did not contain an exclusion clause as to disability or disease, the Oklahoma Supreme Court held that under the policy language, plaintiff was still required to prove the insured "has suffered the injury directly and independently of all other causes solely through external, violent and accidental means."  *Id*. at 390.  Where evidence was uncontradicted that plaintiff would not have died from the accident if he had not had an aneurysm and that he died by reason of the bursting of a pre-existing aneurism, coverage was properly denied, *id*. at 390, despite testimony from a doctor that the car wreck may have torn the aneurism or otherwise hastened the bursting of the aneurism. *Id*. at 389.  *See also*, Bewley v. American Home Assurance Company, 450 F.2d 1079,

---

[6] Obviously, a matter for other authorities, and not for this court, is the overriding question of whether policies like this one, providing niche coverage, serve the interests of consumers at all. It is conceivable, if not probable, that policies like this one engender "peace of mind" significantly in excess of that which is warranted.

1080-82 (10th Cir. 1971) (directed verdict for insurer affirmed on appeal, applying Oklahoma law, where both fall and a pre-existing heart condition contributed to death; policy provided that "injury" means "bodily injury caused by an accident occurring while policy is in force *** and *resulting directly and independently of all other causes* in loss covered by the policy," *id.* at 1080, emphasis in original; the court concluded plaintiffs were not entitled to coverage, recognizing that the coverage provided by the policy was "narrow," *id.* at 1082).

Because the court concludes, on the undisputed facts, that plaintiff's claim falls outside of the coverage provisions, it is not necessary to reach the parties' arguments regarding any of the exclusionary language (also referred to in this order as the sickness language) contained in the policy. For example, even if the court were to find that the definition of "sickness" is ambiguous and circular as plaintiff urges, and even if the court were to therefore construe the ambiguity in favor of plaintiff or strike the definition of "sickness" as well as the sentence in the "injury" definition which refers to an injury "caused or contributed to by Sickness," doing so would not change the result here. The threshold issue is whether the claim comes within the policy's coverage language which provides that benefits will be paid if "death occurs as a direct result of an Injury" [meaning] "[b]odily injury by an accident" where "[t]he Injury...must be independent of all other causes." Because the claim does not come within this coverage language, no benefits are due as a matter of law, regardless of whether any exclusionary language or sickness language might also apply. Accordingly, defendant has not breached the contract, and defendant is entitled to summary judgment in its favor on plaintiff's breach of contract claim.

This finding is material to plaintiff's bad faith claims. As recognized by plaintiff, "The core of a bad-faith claim 'is the insurer's unreasonable, bad-faith conduct, including the unjustified withholding of payment due under a policy.'"

(Doc. no. 32, p. 20, citing McCorkle, v. Great Atlantic Ins. Co., 637 P.2d 583, 587 (Okla. 1981)). An insurer has the right to resist payment and litigate any claim to which the insurer has a reasonable defense. Buzzard v. Farmers Ins. Co., Inc., 824 P.2d 1105, 1109 (Okla. 1991). Although a legitimate dispute regarding coverage does not act as an impenetrable shield against a valid claim of bad faith where the insured presents sufficient evidence reasonably tending to show bad faith or unreasonable conduct, Vining on Behalf of Vining v. Enterprise Financial Group, Inc., 148 F.3d 1206 (10th Cir. 1998), there is no such evidence here. There is no evidence to support a bad faith denial of benefits claim.

Nor is there any evidence showing bad faith as a result of the manner in which defendant handled the investigation or the denial of plaintiff's claim.[7] Plaintiff's arguments that Monumental's failure to comply with the disclosure requirement constituted bad faith, or that the failure to comply with that requirement after Johnson was decided constituted bad faith, are rejected. Monumental argues that under Okla. Admin. Code 365:10-5-2, the disclosure requirement contained in Okla. Admin. Code 365:10-5-6 does not apply to the certificates in question because the certificates are group policies, not individual policies. The court need not decide that issue, but merely notes Monumental's position as further confirmation that failure to comply with the disclosure provision does not constitute bad faith.

The court also rejects plaintiff's argument that defendant's failure to provide written guidelines or claims manuals for its adjusters to follow supports a bad faith

---

[7]Of course, plaintiff need not actually "show" or "prove" or "establish" anything to defeat defendants' motions. Plaintiff must merely demonstrate the existence of a genuine issue of material fact. Although this order sometimes uses the quoted terms because they are used in the case law, the court has consistently judged plaintiff's claims by the lesser standard which is appropriate at this stage. Goodwin v. General Motors Corporation, 275 F.3d 1005, 1011 at n.7 (10th Cir. 2002)(abrogated on other grounds.).

claim in the circumstances of this case.  *See*, Hance v. Triton Ins. Co., 2007 WL 30281, *4 (E.D. Okla. 2007) (summary judgment granted to defendant despite claims that defendant's failure to have claims manuals or to train personnel in aspects of Oklahoma law, constituted bad faith).  The court likewise rejects plaintiff's argument that Monumental's failure to train its employees regarding Oklahoma law supports a bad faith claim here.  *See*, *id*. (failure to train was not bad faith).  The court rejects plaintiff's argument that Monumental failed to properly investigate plaintiff's claim, and that this failure constituted bad faith.  *See*, *id*. (claim of inadequate investigation did not support bad faith claim under Oklahoma law where information was in possession of plaintiff and there was no evidence that further investigation would have moved claims process toward completion).  There is no evidence to support any claim that the investigation was incomplete or biased.

The court also rejects plaintiff's argument that the claims adjuster's referral of plaintiff's claim to a paid medical consultant, or to Monumental's legal department for review, supports a bad faith claim.  There is nothing in the manner by which review was requested that suggests bad faith or a biased investigation.  The court also rejects plaintiff's argument that the claim presented such a close call that Monumental should have erred on the side of the beneficiary and that its failure to do so is evidence of bad faith.  Finally, there is no evidence that defendant intentionally misread or misconstrued any policy provisions.

In short, whether plaintiff's bad faith arguments are considered separately or together, there is no evidence to support a bad faith claim here, and defendant is entitled to summary judgment on all aspects of that claim.

Plaintiff's negligence *per se* claim is based on the contention that Monumental violated Oklahoma Statutes and regulations, including Okla. Adm. Code 365:10-5-6 regarding disclosures required in accident only policies and 36 O.S. 2001 § 1250.5.3

which states that failing to adopt and implement reasonable standards for prompt investigations of claims constitutes an unfair claims settlement practice. Plaintiff has not presented any evidence of a violation of any statute or regulation. Moreover, an element of a negligence *per se* claim is that the violation of the statute or regulation in question must have caused the injury about which plaintiff complains. Boyles v. Oklahoma Natural Gas Co., 619 P.2d 613, 618 (Okla. 1980). There is no evidence showing that any claimed violation of any Oklahoma statute or regulation caused the alleged injuries to plaintiff, such as damages based on an improper denial of benefits. Accordingly, defendant is entitled to summary judgment on plaintiff's negligence *per se* claim as well.

## V.  Conclusion

After careful consideration of the allegations, the record, and the relevant legal authorities, defendant's motion for summary judgment is **GRANTED**.

Dated this 27th day of April, 2009.

_____
STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

08-1067p005(pub).wpd